Babka Plastering Company et al., Appellees, v. City
State Bank of Chicago et al., Defendants.
Appeal of Samuel B. Allison et al., Appellants.

Gen. No. 35,171.

Opinion filed December 29, 1931.

West & Eckhart, Slottow & Leviton, Robert E. Turney, David Eichberg, Sanders, Childs, Bobb & Wescott, Marshall & Marshall and Elmer M. Leesman, for appellants; Elmer M. Leesman, Frank G. Marshall, Thomas L. Owens and William Rothmann, of counsel.

Brown, Fox & Blumberg, for appellees; Charles LeRoy Brown and Jacob Logan Fox, of counsel.

Mr. Justice Kerner delivered the opinion of the court.

December 14, 1929, the complainants Babka Plastering Company, William Horalek, Helen Campbell and Jerry O. Novak, filed their amended and supplemental bill on behalf of themselves and of all other creditors of the City State Bank of Chicago, organized under the Banking Act of Illinois, by which they sought to enforce the constitutional superadded liability of stockholders of the bank under section 6, Cahill's Rev. Stats. of Illinois, ch. 16a, ¶ 6, entitled "Banks." The appellants Fred Becker, Peter H. Behl, Timothy Crimmings, Leo G. Haas and D. S. Komiss, filed their answers demanding strict proof of the various allegations. Samuel B. Allison filed a general and special demurrer, which was overruled. He elected to stand by his demurrer and the bill as to him was taken as confessed. December 21, 1929, the Chicago Title & Trust Company was appointed receiver with power to

receive payment in satisfaction of the liabilities of the stockholders to the creditors. The cause was referred to a master to take the testimony and report his conclusions of law and fact. The master filed his report. Objections filed thereto, ordered to stand as exceptions, were overruled and December 19, 1930, the court entered a decree ordering the payment of the full amounts of their liabilities by 79 defendants on account of their respective holdings of stock. Six of the defendant stockholders have perfected separate appeals which were consolidated for a hearing.

By the decree the court found *inter alia* that the City State Bank of Chicago was organized December 1, 1913, for the purpose of doing a general banking business in Chicago, under "An Act concerning corporations with banking powers"; its capital stock was $50,000 which subsequently was increased to $400,000; that November 2, 1929, the auditor of public accounts made an examination of the bank and as a result closed the bank and it ceased doing business; that November 11, 1929, the auditor of public accounts having ascertained that the bank was being conducted in an illegal, fraudulent and unsafe manner, and that the impairment of its capital stock could not be made good, appointed a receiver of the bank and its assets; that November 13, 1929, the Attorney General of the State filed a bill for the purpose of restraining and enjoining the bank from doing business, confirming the appointment of the receiver to liquidate and distribute its assets and dissolve the corporation, and on that date the appointment of the receiver was confirmed and he has since been liquidating the property and effects of the bank, and converting its assets into cash; in those proceedings a dividend of 20 per cent of the amount of their respective claims has been paid to the creditors of the bank; that at the time of the entry of the decree the bank owed Babka Plastering Company

$1,336.21; William Horalek $49.54; Helen Campbell $268.80; and Jerry O. Novak $75.22; that portions of these several items of indebtedness accrued to the appellees from time to time while persons named in the decree were stockholders in the bank; that the creditors of the bank number upwards of 23,500; that the proceeding is a representative suit on behalf of appellees and other creditors of the bank; that the amounts due to all of the creditors aggregate $2,705,489.42; that appellees proved the claims of all such creditors; that the indebtedness which has accrued and is now due and owing to said creditors accrued from time to time while the persons named in the decree as stockholders remained such stockholders; that no part of it has been paid and it remains due and payable; the decree then sets forth the names of the stockholders, the number of shares of stock held by each during the period stated and the liabilities to the creditors.

In the decree the chancellor after making the above findings adjudged and decreed that a writ of injunction issue restraining permanently each and all creditors of the bank from instituting or prosecuting, without leave of court, any suit against any of the stockholders of the bank for the purpose of enforcing the liability of any or all of the stockholders of the bank, or any or all of the creditors thereof; confirmed the appointment of the Chicago Title & Trust Company as receiver; empowered the receiver to collect all money found in the decree to be due from the stockholders to the creditors of the bank, and to hold the money subject to the further order of the court; that there be paid within 10 days from the entry of the decree to the receiver by the several defendants in satisfaction and discharge of their respective constitutional superadded liabilities as stockholders of the bank the following sums: (Here follow the names and

amounts, among which are the following: Samuel B. Allison as holder of 10 shares $1,000; Fred Becker as holder of 10 shares $1,000; Peter H. Behl as holder of 20 shares $2,000; Timothy Crimmings as holder of 5 shares $500.; Leo G. Haas as holder of 10 shares $1,000, and D. S. Komiss as holder of 25 shares $2,500.) It was also ordered in said decree that the receiver cause public notice to be given, directed to the creditors of said bank, notifying them to present to the receiver their respective claims as such creditors, and all persons whose claims shall not have been presented within the time specified in said notice shall be barred from the proceeds of the liabilities of the stockholders of the bank which may be recovered, and shall be barred from in any manner enforcing the liabilities of the stockholders to the creditors under section 6, art. 11 of the Constitution, and the court retained jurisdiction of the cause for the purpose of causing distribution to the creditors of said bank.

The theory of the appellees is that the instant case is a representative suit for the benefit of all the creditors of the bank, brought by them as creditors, on behalf of all the creditors, and that they can require all the stockholders of the bank to pay to the receiver appointed by the court the maximum amount which the stockholders could be held for under section 6 of art. 11 of the Constitution which provides that, ''Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder''; that the liability of stockholders is contractual, primary, direct and immediate, and is to the creditors who may sue, either individually at law or collectively in a representative suit; that the creditors may proceed against all or against only a

part of the stockholders, by a single suit in equity, by any number of creditors representing all other creditors, for the purpose of enforcing the liabilities of all stockholders; require all creditors to come in and prove their claims and obtain an equitable distribution of all the funds collected among all the creditors of the bank, and that the existence of a liability on the part of the stockholders does not depend upon the ascertainment of the existence or extent of a deficiency of the bank's assets to pay creditors. On the other hand, it is the contention of the appellants, as we understand it, that the constitution does not permit creditors whose combined claims fall short of the maximum stock liability to enforce that liability in equity, and that they (the stockholders) cannot be compelled to pay their liability under the constitution to anyone other than the creditors themselves. We are of the opinion that appellants' contention cannot be maintained; to do so would be to render it impossible to enforce the recoveries in an equity case and the depositors would be driven to innumerable suits at law, resulting in a multiplicity of suits and inequality in the separate recoveries.

It appears from the evidence that the aggregate amount of the claims of the appellees is $1,729.77, and that their claims accrued while the appellants were stockholders of the bank. The stock liability which they seek to enforce is represented by a capitalization of $400,000, and the decree requires each of the stockholders to pay the maximum amount which the stockholders could be held for under the constitution, the total of which exceeds the amount of the claims of the individual appellants. Samuel B. Allison held his shares from April 13, 1929, to September 23, 1929, and the unsatisfied liabilities accruing during that period amounted to $740,832.28; Becker held his shares from April 4, 1929, to June 29, 1929, and the unsatisfied lia-

bilities accruing during that period amounted to
$216,922.39; Behl held 10 shares from August 2, 1929,
to August 16, 1929, and 10 shares from August 2, 1929,
to November 2, 1929, and the unsatisfied liabilities
accruing during the first period amounted to $86,062.56,
and from August 2, 1929, to November 2, 1929, to
$1,695,762.46; Crimmings held his shares from Au-
gust 4, 1929, to November 2, 1929, and the unsatisfied
liabilities accruing during that period amounted to
$1,681,541.48; Haas held 5 shares from September 18,
1929, to September 23, 1929, and 5 shares from Septem-
ber 18, 1929, to November 2, 1929, and the unsatisfied
liabilities accruing during those periods amounted to
$42,485.18 and $1,400,310.28, respectively, and Komiss
held 25 shares from October 4, 1929, to November 2,
1929, and the unsatisfied liabilities accruing during
that period amounted to $1,229,102.84.

It would not be out of place to incorporate in this
opinion a review of the law governing suits against
stockholders of Illinois banks, and we shall proceed
to do so. When Illinois was admitted into the Union
in 1818, only two banks were in operation. (*People v.
Marshall*, 6 Ill. 672, 684.) One of these banks became
the State Bank of Illinois. It failed before the adop-
tion of the Constitution of 1848, and its liquidation was
taken over by the State. (*People ex rel. Koerner v.
Ridgley*, 21 Ill. 65.) All the banks which existed in
Illinois prior to 1848 had failed. (*People ex rel. Bad-
ger v. Loewenthal*, 93 Ill. 191, 199.) Art. X of the Con-
stitution of 1848 imposed a liability upon the stock-
holders of certain banks, but that provision was ap-
plicable only to banks of issue. (*People ex rel. Badger
v. Loewenthal*, 93 Ill. 191, 197–200.) During the time
the Constitution of 1848 was in effect, by special acts
of the legislature, about 175 charters were granted to
banks of deposit and not of issue. (*People ex rel.
Badger v. Loewenthal, supra; People v. Gould,* 345 Ill.

288, 293.) Those charters varied in their provisions with reference to stockholders' liabilities. Many of those banks failed during the panic of 1857 and the years of the Civil War with disastrous results to the depositors. A number of suits for the enforcement of the stockholders' liabilities under the several charters later reached the Supreme Court and resulted in the adoption in a series of decisions of certain principles governing that liability. Because the charters varied considerably one from the other the decisions so rendered are not always applicable to suits brought under the provisions of the Constitution of 1870. After the adoption of the Constitution of 1870 the legislature enacted the General Bank Act of 1887. By this act each stockholder was made liable for his ratable share only, and no more. In *Dupee v. Swigert,* 127 Ill. 494, section 6 of the Bank Act of 1887 was declared unconstitutional, because it provided for a liability different from that imposed by the constitution. In 1889 the legislature amended section 6, and as so amended, it has incorporated in it the very language of the constitution, and has added to it certain provisions as to recording issues and transfers of stock and also the following: "No transfer of stock shall operate as a release of liability provided in this section." Thereafter, neither the provisions of the Constitution of 1870, nor the amended section 6, received any further construction until the cause of *Golden v. Cervenka,* 278 Ill. 409, decided April 19, 1917, which held that the liability is primary and absolute and attaches the moment the debt is contracted by the bank; that it is a liability of all stockholders to all the creditors, the remedy for its enforcement is in equity and is governed by equitable principles—the stockholders being answerable as original and principal debtors.

The question upon whom the right to enforce the remedy devolves, and the mode of procedure that will be adopted, have been in controversy in many of the

courts of last resort. It is true these courts have not been of the same opinion; however, the generally accepted rules are that the fund created by the statute is in the nature of a security for the common benefit of the creditors; that the stockholders are in effect partners who assume a contractual, primary liability, running directly and immediately to the creditors, each stockholder being severally and invidually liable for every debt accruing while he held the stock, with a limitation of the liability to the amount of his stock and that a suit in equity affords the most effectual and convenient remedy for its enforcement. (*Fuller v. Ledden,* 87 Ill. 310; *McCarthy v. Lavasche,* 89 Ill. 270; *Hull v. Burtis,* 90 Ill. 213; *Eames v. Doris,* 102 Ill. 350; *Thompson v. Moisser,* 108 Ill. 359; *Tunesma v. Schuttler,* 114 Ill. 156; *Queenan v. Palmer,* 117 Ill. 619; *Schalucky v. Field,* 124 Ill. 617; *Colton v. Mayer,* 90 Md. 711; *Pfohl v. Simpson,* 74 N. Y. 137; *Farnsworth v. Wood,* 91 N. Y. 308; *Golden v. Cervenka,* 278 Ill. 409; *American Nat. Bank of Mt. Carmel v. Holsen,* 331 Ill. 622; *Dukeman v. Beisley,* 250 Ill. App. 537; *Rosenfeld v. Horwich,* 221 Ill. App. 304; *Candor v. Mercer County State Bank,* 257 Ill. App. 192, and *Golden v. Cervenka,* 212 Ill. App. 665.)

In *Terry v. Little,* 101 U. S. 216, the court said: ''Undoubtedly, the object was to furnish additional security to creditors, and to have the payments when made applied to the liquidation of debts. So, too, it is clear that the obligation is one that may be enforced by the creditors; but as it is to or for all creditors, it must be enforced by or for all. The form of the action, therefore, should be *one adapted to the protection of all.*'' (Italics ours.)

In *Pfohl v. Simpson,* 74 N. Y. 137, 143–144, it was said:

''Nor is there any difficulty in segregating the liability of each stockholder, and devoting the avails of it to the benefit of the creditor, or class of creditors

who have the right to avail of it; so that no stockholder shall be held for the debt of a creditor which was not created while he was a stockholder, and so that no creditor shall lose the benefit of the liability of a stockholder who was such when his debt was created. Indeed, a suit in equity laying hold of all the stockholders in like category and promoted for the benefit of all creditors having like interest, is peculiarly adapted to work out exactly just and equable results. . . . The object and effect is only to bring to one forum the determination of rights which must, if prosecuted separately, more or less conflict to mutual harm. Before that one forum, in one suit, the respective rights and the respective liabilities can be ascertained and determined, and each get his own, and be subjected to his own, and not another's.''

In *Golden v. Cervenka,* 278 Ill. 409, 435, it was said:

''The stockholders' liability created by the constitution is to the creditors of the corporation, and is a several and individual liability on the part of each stockholder to each creditor. It is not a liability to the corporation or to the creditors of the corporation as a class, but to each individual creditor on the part of each individual stockholder. Therefore, it is the creditors, alone, individually, or collectively, who can enforce the liability by such remedies as the law affords.''

The main argument of appellants' counsel is that the instant case is an unauthorized interference with the rights of creditors in the collection of the indebtedness due the creditors individually. They have labored strenuously to convince the court that the bill cannot be maintained, and great reliance is placed upon the case of *Wincock v. Turpin,* 96 Ill. 135, which was a bill filed by Turpin as receiver of the bank, and Potter, a depositor, alleging it was brought by Turpin as trustee of all depositors. The bill prayed that Wincock and

others who had commenced suits at law be restrained from prosecuting those suits. A demurrer to the bill was overruled and the bill taken as confessed. The Supreme Court reversed the cause on the ground that the bill was indefinite, vague and uncertain, and held the liability is legal, is created by statute, and must be controlled by its provisions, and when the statute creates a liability, the remedy is invariably at law, unless the statute provides for proceedings in equity; that when the statute has declared the liability of stockholders shall be to the depositors other persons are precluded from interfering or intermeddling with a matter which alone interests or concerns the depositors; that the statute having conferred the right on the depositors, they should be left alone to seek a remedy if they choose, without interference by others. And on page 143 the court said:

"It may be a state of facts might exist which would authorize a court of equity to bring before it all the stockholders and depositors and determine their rights and adjust equities, marshal the fund and distribute it *pro rata,* but no such case is made by this bill; and until such a case shall be made we must leave the depositors to pursue their remedies under the law."

We have carefully considered the argument of counsel but are compelled to the conclusion that the contention of the appellants cannot be sustained and that the great weight of authority holds that when one creditor sues on behalf of all other creditors the represented creditors are as much before the court as the one creditor directly suing, and are equally bound by the decree, as each creditor has an identity of interest in the questions involved, in the relief sought, in the fund to be collected and the rights of each must be considered in making an equitable apportionment; that where the parties interested are numerous and the suit is for an object common to them all, some of the body

may maintain a bill on behalf of themselves and of others. In *Guilfoil v. Arthur,* 158 Ill. 600, 605, it was said:

"It is a general rule, and one well understood, that all persons interested in the subject matter of the litigation should be made parties complainant or defendant. But there are exceptions to this general rule. In section 97 of Story's Equity Pleading, in speaking on this subject, the author says: 'The most usual cases assigning themselves under this head of exceptions are, . . . (3) where the parties are very numerous, . . . and it is impracticable to bring them all before the court.' In section 107 . . . it is said: 'As there is privity of interest the court will allow a bill to be brought by some of the parties in behalf of themselves and of all the others, taking care that there shall be due representation of all substantial interest before the court.' " (See also *Smith v. Swormstedt,* 16 How. (U. S.) 288, 302–303; *Knopf v. First Nat. Bank of Chicago,* 173 Ill. 331, 333; *Lee v. City of Casey,* 269 Ill. 604, 606; *People v. Clark,* 296 Ill. 46, 50–51.) The right to proceed in such a suit is not defeated by the fact that the liability of the stockholders is several and not joint. (*Golden v. Cervenka,* 278 Ill. 409, 435–436; *Pfohl v. Simpson,* 74 N. Y. 137; *Bagley & Sewall Co. v. Ehrlicher,* 40 N. Y. S. 922; *Low v. Buchanan,* 94 Ill. 76; *Harper v. Union Mfg. Co.,* 100 Ill. 225, and *Harmon v. Auditor of Public Accounts,* 123 Ill. 122.

The *Wincock* case was followed by *Eames v. Doris,* 102 Ill. 350, in which Otis, as receiver, and Eames and other creditors of the bank, appealed from a decree dissolving an injunction which had been granted to restrain Doris and other creditors of the bank from prosecuting actions at law against its shareholders to enforce the stock liabilities under its charter. The bill prayed the stockholders pay to the receiver the sums due the creditors from the stockholders in order that

the same may be distributed equally; that the persons interested in and entitled to such funds be ascertained and that the creditors be enjoined from prosecuting their actions against the stockholders. The court said, page 356:

"But the court never has held that there might not be resort to a court of equity to enforce the liability, or that *one creditor might not,* at the instance *of the whole body of the other creditors,* be restrained from the prosecution of his individual suit, where its prosecution would be to the prejudice of the equal interest of all the creditors." (Italics ours.) And the court further held that the facts authorized the interposition of a court of equity and said, page 357:

"The liability constitutes a fund for the benefit of all of these two classes of creditors, and they are entitled to share in it in proportion to the amount of their debts. . . . If individuals of these two classes of savings and trust depositors be allowed to prosecute their separate suits, they may recover payment of their demands in full, while others of the classes having claims equally equitable, may be enabled to obtain no payment whatever, or but a partial one. Hence the propriety, in the case of such a deficiency in a common fund for the common benefit of creditors, of a proceeding in equity by one or more in behalf of all the creditors, in order that the equitable principle that equality is equity, may be applied,—that single creditors, by individual suits, may be prevented from an appropriation to themselves of the entire or unequal benefit of the security, to the exclusion of others equally entitled, and that there may be a collection, and *pro rata* distribution of the whole fund among all the creditors. . . . The avoiding of a multiplicity of suits is a further ground of equitable jurisdiction."

*Tunesma v. Schuttler,* 114 Ill. 156, was an action in assumpsit brought by a depositor of a bank against

a stockholder under section 9 of the charter of the bank, which provided that when default shall be made in the payment of any debt or liability contracted by the bank, the stockholders shall be held individually responsible for an amount equal to the amount of the stock held by them respectively. The stockholder filed a plea that one Berls and other creditors of said bank, on behalf of themselves and all of the creditors of the bank, filed their bill against the bank praying that a receiver of the assets of the bank be appointed; that the bank be declared insolvent and its affairs wound up, its assets collected and its debts paid; that the bank was declared to be insolvent and a receiver was appointed and empowered to collect and dispose of the assets, and that Berls and others for themselves and all other creditors of the bank filed their amended and supplemental bill making all stockholders parties defendant thereto; that an injunction was issued by said court in said cause restraining the further prosecution of said suit until the final hearing of said cause and that a decree was finally entered finding all of said defendant stockholders liable for the debts and liabilities of said bank to its creditors. Plaintiff replied that he had no knowledge of the proceedings mentioned in the plea, was not a party thereto, and received none of the benefits arising therefrom, and that said court of chancery had no jurisdiction of this plaintiff nor of the subject matter constituting the plaintiff's cause of action. The court sustained a demurrer to the replication. The Supreme Court affirmed the judgment and in discussing the questions involved said, p. 164:

"*Wincock v. Turpin,* 96 Ill. 135, is cited as an authority against the jurisdiction of a court of equity to enforce the rights of depositors under a charter provision similar to the one now under consideration. It is true the bill in that case was for the purpose of en-

forcing a liability of the same kind as that now under consideration, and that the right to relief, under the bill as framed in that case, was denied; but the case does not decide that a bill will not lie in any case to enforce this liability." And on page 165: ". . . we see nothing in it (referring to the *Wincock* case) to justify the conclusion that a bill of this kind will not lie under any circumstances, but, as already stated, the very contrary is conceded. All doubt on this question, however, is completely removed by the later case of *Eames v. Doris*, 102 Ill. 350, which expressly holds that a bill of this kind will lie, so that the only question now is, so far as the present inquiry is concerned, do the facts stated in the bill under consideration bring the case within the general principle or rule established by that case? We have no hesitancy in saying they do. The insolvency of the bank, deficiency in assets to pay creditors, the personal liability of stockholders to the depositors, the existence of some nine hundred unpaid depositors, some of whom were trying, by separate suits at law, to get an advantage over the others, and that such separate litigation would waste and exhaust the proceeds of this liability of the stockholders, the only fund to which depositors could look for payment, is all clearly stated in the bill. This was sufficient. The fundamental principle upon which bills of this kind are maintained, is equality of benefit and burden among a numerous class of persons similarly situated, in respect to a particular fund. The principle that equality is equity, has its foundations deeply laid in equity law, and is one of the most fruitful sources of equity jurisdiction."

In the case of *Queenan v. Palmer*, 117 Ill. 619, 626, the court said:

"Undoubtedly the law is, where a common fund exists upon which numerous persons have claims, equity will seize hold of it, and pay it out ratably upon

their respective claims, or pay them in full, if the fund shall be sufficient for that purpose, in cases where it is wrongfully withheld. It may not be always known in advance whether the common fund will be sufficient to satisfy all demands upon it, and to ascertain that fact is a well recognized head of equity jurisdiction. Treating the liability the statute creates upon the stockholders in this bank as a common fund, out of which depositors may be paid, as well as out of the assets of the bank itself, the jurisdiction of a court of equity to seize such fund, and control it for the benefit of depositors, would hardly be questioned where an exigency arises that demands the exercise of such power." And on page 628: "That it is the correct construction of the charter that the responsibility imposed upon stockholders is primary, and exists with the obligation of the corporation itself, and that it constitutes a common fund for the benefit of depositors or others, seems clear, both upon principle and upon authority, and hence the jurisdiction of a court of chancery in such cases is equally clear."

*Palmer v. Woods,* 149 Ill. 146, was a bill brought by complainants against the stockholders of the Springfield Savings Bank for the payment of amounts alleged to be severally due them as creditors of the bank. The stockholders filed pleas setting up proceedings in a former case against all of the complainants. The question, therefore, was, Should the complainants in this case be held by a decree in another to which they were not parties and to which they never consented? The court on page 153 said:

"That the proposition is against the general rule is admitted, but an attempt is made to bring it within exceptions to that rule. The exception relied upon is stated by the chancellor in *Hallett v. Hallett,* 2 Paige, 12, thus: 'If there are many parties standing in the same situation as to their rights or claims upon a par-

ticular fund, and when the shares of a part cannot be determined until the rights of all the others are settled or ascertained, as in the case of creditors of an insolvent estate or residuary legatees, all the parties interested in the fund must, in general, be brought before the court, so that there may be but one account and one decree settling the rights of all. And if it appears on the face of the complainants' bill that an account of the whole fund must be taken, and that there are other parties interested in the distribution thereof to whom the defendants would be bound to render a similar account, the latter may object that all who have a common interest with the complainants are not before the court. In these cases, to remedy the practical inconvenience of making a great number of parties to the suit, and compelling those to litigate who might otherwise make no claim upon the defendants or the fund in their hands, a method has been devised of permitting the complainants to prosecute in behalf of themselves and all others standing in the same situation who may afterwards elect to come in and claim as parties to the suit and bear their portion of the expenses of the litigation. If such parties neglect to come in under the decree after a reasonable notice for that purpose, the fund will be distributed without reference to any unliquidated or unsettled claims which they might have had upon the same. But if the rights of such absent parties are known and ascertained by the proceedings in the suit, provision will be made for them in the decree. . . . In either case the court will protect the defendants against any further litigation in respect to the fund.''

The instant case illustrates the propriety and fitness of the rules announced. There are some 23,500 persons represented by appellees. It is apparent that to require all the parties to be brought upon the record, as would be required in a suit at law, would amount

to a denial of justice. The right may be defeated by objection to parties, from the difficulty of ascertaining them, or if ascertained, from the changes constantly occurring by death or otherwise.

It is also contended that appellees have failed to prove the insolvency of the bank. There is no merit in this contention. A bank is insolvent when it is unable to meet its liabilities as they become due in the ordinary course of business, or when it cannot pay its depositors on demand. (7 C. J. 727.) It appears from the evidence that on November 2, 1929, the auditor of public accounts made an examination of the bank and found that among the resources of the bank and carried as assets were certain worthless items aggregating $1,036,277.29; that the resources available for liquidation and payment of the depositors and other creditors were so depreciated that the capital stock had become impaired to such an extent that it could not be made good and that the bank was conducted in an unsafe manner; that the auditor of public accounts closed the bank and appointed a receiver who duly qualified and has since been liquidating and distributing its assets, and one year thereafter paid its creditors only twenty per cent of their claims, leaving still due and unpaid $2,705,489.42. These and other facts clearly show that the bank was insolvent at the date of the filing of the bill. Furthermore, it was not necessary to prove that the bank was insolvent as the liability of the stockholder to the creditor is primary, and is regarded as that of partners, occupying the same relation to the creditor as the bank itself, owing the same debt to the depositor as the bank owes and he can be sued for the debt just as the bank may be sued, and as soon as the bank may be sued. (*Schalucky v. Field,* 124 Ill. 617, 622.)

It is finally claimed by the appellant Allison that the court. erred in overruling his general and special

demurrer, his contention being that none of the appellees could have a cause of action against him unless his claim accrued during the time Allison was a stockholder; that nowhere in the bill was there an averment as to the date or dates when the claims of the appellees accrued. The demurrer admitted the truth of the facts properly pleaded in the bill, as distinguished from conclusions or inferences of law. In the bill the appellees alleged the names and the number of shares held by the respective stockholders, and among them is Allison, and that he held 10 shares from April 13, 1929, to September 23, 1929; that the bank owed its creditors upwards of three and one-half million dollars constituting liabilities of the bank which accrued to the creditors while the persons named as stockholders remained such stockholders, all of which liabilities were and are evidenced by pass books or certificates of deposit, and that for such liabilities the stockholders were liable to said creditors to an amount equal to their shares of stock held by said respective stockholders while said respective liabilities accrued. It further alleges the amount of the indebtedness of the bank to each of the four appellees and that the several items of indebtedness accrued from time to time, while the persons named as stockholders were such stockholders and that no part of said several items of indebtedness has ever been paid by said bank or by any of said stockholders. It further alleges that the bill was brought on behalf of all other creditors of the bank and that other creditors of the bank have threatened and are threatening to commence divers suits at law each against some one or other of the stockholders in order to recover from said stockholders separately the amounts of the liabilities of said bank to the particular creditor or creditors; that in said suits at law said creditors will obtain judgments against those of said stockholders who held their respective shares during the respective

times when the several liabilities sought to be enforced accrued, and that said judgments will be for large portions of the amounts of the liabilities of said stockholders under the constitution and thereby said creditors so threatening and intending to bring and maintain said suits at law will appropriate to themselves an unjust and inequitable advantage over the appellees and other creditors of said bank in satisfaction of their respective claims against said bank; and that the amounts which may be collected from said stockholders of said bank on account of their liabilities to the creditors of the said bank should, in equity, be applied to the common benefit of said creditors in satisfaction of the liabilities of said bank to its creditors severally accruing to each creditor during the respective time or times said stockholders remained stockholders thereof. After examining the allegations of the bill, and considering the briefs and arguments of counsel and reviewing many adjudicated cases, we have reached the conclusion that the bill sufficiently alleged such ultimate facts as entitled the appellees to maintain the bill and that the chancellor did not err in overruling the demurrer.

Being of the opinion that the decree of the circuit court is supported by law and the evidence, it is hereby affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.