MARY QUEENAN *et al.*

*v.*

JOHN M. PALMER *et al.*

*Filed at Springfield June 10, 1886.*

1. CHANCERY JURISDICTION—*distribution of common fund.* Where a common fund exists, upon which numerous persons have claims, which may or may not be sufficient to satisfy all demands upon it, a court of equity will have jurisdiction to ascertain the amount of such fund, and its sufficiency, and distribute or apportion the same among those it may find entitled to share therein.

2. SAME—*to enforce liability of stockholders of a bank corporation.* Where the charter of a banking corporation makes its stockholders individually liable to the amount of the stock held by them, respectively, to depositors and other creditors of the bank, for any losses they may sustain, such liability is a common fund for the security of creditors, and a court of equity, aside from the ground of discovery, will have jurisdiction of a bill by a creditor, for himself and others, to enforce such liability, and control the fund thus raised for their benefit, and distribute the same ratably among them, the remedy at law in such case being inadequate without the bringing of a multiplicity of suits.

3. STOCKHOLDERS—*individual liability—whether penal in its nature.* A bank charter provided that the stockholders should "be responsible, in their individual property, in an amount equal to the amount of stock held by

them, respectively, to make good losses to depositors or others:" *Held*, that the individual liability was not in the nature of a penalty, and therefore enforceable only in a court of law, but was primary, and subject to the demands of depositors and other creditors, equally with the assets of the bank.

4. SAME—*statute making stockholders liable, construed.* A charter or statute making the stockholders of a corporation individually responsible in an amount equal to their stock, "to make good losses to depositors or others," will be construed to make the stockholders liable to all creditors who may suffer from the default or failure of the corporation to pay its indebtedness. The total or partial insolvency of the corporation, and its neglect to pay, is a loss to the creditor, in the sense of that word as used in the statute. Besides, the words, "to make good all losses," are equivalent to the words, "to make good all deposits," and mean, to protect depositors against losses.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. McCLERNAND & KEYES, and Mr. L. F. HAMILTON, for the appellants:

It is claimed that a court of equity has no jurisdiction to enforce the liability of the stockholders of the bank to depositors, the remedy being at law. This we deny. The right to sue at law does not necessarily exclude the jurisdiction of a court of equity, provided there are equitable grounds therefor. *Eames* v. *Doris*, 102 Ill. 350.

The court in that case had jurisdiction upon either of three grounds: First, the debts largely exceeded the assets and the liability of the stockholders combined; second, the liability of the stockholders was a common fund for the benefit of all the creditors entitled to share therein, and the securing a ratable distribution of the fund was a proper ground of equitable jurisdiction; and third, the avoidance of a multiplicity of suits.

The discovery sought was sufficient to give jurisdiction, and where that once attaches, the bill will be retained for other relief. 1 Story's Eq. Jur. sec. 71; *Pool* v. *Decker*, 92 Ill. 509.

The remedy at law in a case like this is wholly inadequate. The fact of a concurrent remedy at law does not exclude the jurisdiction of a court of equity. *Bank of Poughkeepsie* v. *Ibbotson,* 24 Wend. 473; *Van Hook* v. *Whittock,* 3 Paige, 409; *Norris* v. *Johnson,* 34 Md. 485; *Perry* v. *Turner,* 55 Mo. 418; *Dozier* v. *Thornton,* 19 Ga. 325.

When the bank, after receiving the money of depositors, became insolvent, closed its doors, and suspended payment, which it never resumed, a loss occurred to them in the sense of the charter, and they are not required to sue the bank or attempt to realize from its assets.

The liability of the stockholders is founded on a contract contained in the charter, with the depositors, and is not based on a statutory penalty. Their liability is primary. *Coleman* v. *White,* 14 Wis. 762; *Corning* v. *McCullough,* 1 Com. 47; *Harger* v. *McCullough,* 2 Denio, 123; *Paine* v. *Stewart,* 33 Conn. 516; *Young* v. *Rosenbaum,* 39 Cal. 646; *Aspinwall* v. *Sacchi,* 57 N. Y. 331; *Culver* v. *Third Nat. Bank,* 64 Ill. 528; *Corwith* v. *Culver,* 69 id. 502; *Fuller* v. *Ledden,* 97 id. 310.

The stockholder stands in the relation of partner to his co-stockholders, as to creditors of the common corporation; and the common law liability as a partner attaches to him in that character, independently of the charter. His subscription, paid or unpaid, constitutes alike an asset, or fund, bound for the debts of the corporation. *Spear* v. *Crawford,* 14 Wend. 20; *Manufacturing Co.* v. *Small,* 21 id. 273; 2 Hill, 127; *Railroad Co.* v. *Kennedy,* 12 Conn. 499; *Turnpike Co.* v. *McChesney,* 21 Wend. 296; *Sagara* v. *Dubois,* 3 Sandf. Ch. 494.

Messrs. PALMERS, ROBINSON & SHUTT, for Helmle, Reisch, and John M. Palmer:

The act under which the bank organized, provides that the stockholders shall be responsible "to make good all *losses* to depositors or others." The word "others," means all persons

who may suffer losses by the default or misconduct of the corporation, acting in any of its legal capacities. The obligation of the stockholder commences when the bank has not only failed in its duty, but when a loss has already happened. To recover of the stockholders, proof of actual loss must be made.

The losses of depositors and others, by the default of the bank, are in the nature of unliquidated damages, recoverable at law, and not in equity. Besides, the alleged liability is penal. *Diversy* v. *Smith*, 103 Ill. 378.

Messrs. ORENDORFF & PATTON, for the appellee Bradford:

Whatever may be the nature of the alleged liability, the complainants' rights are purely legal, arising upon a statute which does not designate the forum for their enforcement, and therefore the remedy is at law. *Culver* v. *Third Nat. Bank*, 64 Ill. 528; *Corwith* v. *Culver*, 69 id. 502; *McCarthy* v. *Lavasche*, 89 id. 277; *Wincock* v. *Turpin*, 96 id. 135.

Mr. N. M. BROADWELL, for the appellee Tracy:

Under a statute creating a liability, the remedy is at law, unless it provides an equitable remedy. 2 Wait's Actions and Defences, 485; *Wincock* v. *Turpin*, 96 Ill. 135; *Windham Provs'. Inst.* v. *Sprague*, 43 Vt. 502; *Culver* v. *Third Nat. Bank*, 64 Ill. 528; *Tibbals* v. *Libby*, 87 id. 142; *Arenz* v. *Weir*, 89 id. 25; *Fuller* v. *Ledden*, 87 id. 310.

To give a court of equity jurisdiction, the bill must show some equitable grounds of relief. *Eames* v. *Doris*, 102 Ill. 350; *Morris* v. *Tillson*, 81 id. 607.

This liability being in derogation of the common law, the statute imposing it must be strictly pursued. *Bramly* v. *Goodwin*, 95 Ill. 118.

The loss being the contingency upon which the liability of the stockholders was to arise, it could only attach to those who were stockholders at the time of the loss. Morse on

Banks, 494; *Bored* v. *Appleton,* 8 Mass. 472; *Thebus* v. *Smiley,* 110 Ill. 316.

Complainants must show they have exhausted the assets of the bank, before they can pursue the stockholders in equity. *Harper* v. *Manufacturing Co.* 101 Ill. 225.

Messrs. STUART, EDWARDS & BROWN, for Hickox, Fox, Million, and J. A. Chestnut.

Mr. J. A. CHESTNUT, *pro se,* and for T. S. Wood.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

As is seen from the record, the "Springfield Savings Bank" was incorporated by a special act of the General Assembly, approved February, 1867. It seems its capital stock was $100,000, and was divided into shares of $100 each. The charter of the corporation was amended by an act of the legislature, passed April 11, 1869, which amendment contained the following provision: "That the stockholders of said corporation shall be responsible in their individual property in an amount equal to the amount of stock held by them, respectively, to make good all losses to depositors or others; and no assignment of their stock shall release them from such liabilities until after the fact of such an assignment, and name of the person to whom made, and the amount of the stock assigned, shall have been advertised in some public newspaper published in the city of Springfield, for the period of three months." The capital stock was soon taken, the bank organized, and thereafter it continued to transact the usual business done by such institutions, until the 17th day of December, 1877, when it suspended, and never again resumed. It seems the officers, notwithstanding the bank had suspended operations, continued in possession of its property, as they had previously been, doing some business looking to the closing up of its affairs, until the 9th day of April, 1879, when

the corporation made an assignment of its effects and assets, under the Insolvent act, for the benefit of its creditors. The assignee appointed, qualified in due time, and entered upon the duties of the trust. Afterwards, the original assignee resigned, and John S. Bradford was appointed successor, and has since continued to act. At the time the bank suspended operations, its books contained the names of the stockholders, the number of shares owned by each, and the par value.

The original complainants in this case were Mary Queenan and Theodore Kerger, who filed their bill in the circuit court on the 21st day of January, 1880, on their own behalf and on behalf of all other creditors of the bank who might come in and contribute to the expense of the suit. Subsequently, quite a number of persons, by leave of court, came in and became co-complainants with the original complainants. Mary Queenan alleged, by her bill, that she commenced to deposit money with the bank about the 5th of August, 1872, and continued to do so, from time to time, up to May 1, 1875, and that the bank, at the time of filing the bill, was indebted to her, on account of such deposits, in the sum of $4000. The other complainants, by appropriate allegations, stated the amounts, and when and how their respective claims accrued. It is charged that certain persons, all of whom are made defendants to the bill, were owners of stock in the bank at and before the deposits were made by complainants, but they say they do not know and can not state the number of shares owned by each defendant. Complainants allege the loss of their respective deposits by the suspension and insolvency of the bank. A discovery of certain facts is sought, by requiring answers, under oath, to interrogatories propounded in the bill, and the prayer is, that on the hearing of the cause the respective sums due to complainants may be ascertained by the court, and also the number of shares of stock held by each defendant, and that defendants may be required by the decree of the court to pay to complainants, within a time to be fixed,

the sums of money due to each from the bank. A demurrer filed to the bill by a number of defendants was overruled by the court. Most of the defendants answered the bill, but a few of them failed to do so, and as to them a decree *pro confesso* was rendered. Aside from the fact defendants admit the number of shares of stock held by each of them, the answers contained little else, except it is charged in some of them the liability of the stockholders is by way of statutory penalty, and set up the two years' limitation as contained in the statute, and in respect to all intervening petitioners the five years' statute of limitation is insisted upon as a bar to any relief as to them. The cause was referred to the master, and it seems exceptions were taken to his report by both parties, but in the view that is to be taken of the case it will not be necessary to consider them at this time. The court, on the master's report, found certain defendants were owners of stock in the bank, and the number of shares owned by each of them, and decreed that all of defendants found to be owners of and liable for stock, "pay an amount equal to the value of the shares of stock owned by them, as hereinbefore found and stated, to be collected of the living, by execution directly, and of those not living, in due course of administration, as provided in the case of the estates of deceased persons."

It was also found by the court, in its decree, that the bank was liable for the whole amount due to complainants, but that it was insolvent. This decree of the circuit court was, on the appeal of some of defendants, reversed by the Appellate Court for the Third District, and the cause remanded, with direction to that court to dismiss complainants' bill.

As this case now comes before this court, it will only be necessary to consider two of the principal questions made on the record: First, what liability, if any, does the amended charter of the "Springfield Savings Bank" impose upon the holders of shares of stock in the corporation; and second, has chancery jurisdiction to entertain complainants' bill, and

40—117 ILL.

to afford the relief sought by it. Other minor questions raised on the hearing in the circuit court need not now be passed upon. Should the case ever come before the Appellate Court again, that court will no doubt give satisfactory answers to them, without any suggestions in advance from this court.

Naturally, the jurisdictional question made, first presents itself as one of controlling importance. It is confidently maintained, that whatever may be the character of defendants', responsibility under the charter of the corporation, the remedy, if any exists, is at law, and hence the present bill should have been dismissed on the demurrer of some of defendants, for want of jurisdiction. This, it is thought, is a misapprehension of the law. The jurisdiction of the court does not rest on the ground the bill in this case may invoke a discovery of evidence of fact material to enable complainants to maintain their bill. It has a better understood principle of jurisdiction upon which to rest, and one uniformly recognized by the courts of this and other States. It may be that an action at law might have been maintained against defendants on their statutory liability, but that fact would not necessarily exclude a court of equity of jurisdiction. The remedy at law, if any in fact exists in this case, is totally inadequate to afford the full measure of relief without the bringing of a multiplicity of suits, which the law does not favor where it can be avoided. Undoubtedly the law is, where a common fund exists upon which numerous persons have claims, equity will seize hold of it, and pay it out ratably upon their respective claims, or pay them in full, if the fund shall be sufficient for that purpose, in cases where it is wrongfully withheld. It may not be always known in advance whether the common fund will be sufficient to satisfy all demands upon it, and to ascertain that fact is a well recognized head of equity jurisdiction. Treating the liability the statute creates upon the stockholders in this bank as a common fund, out of which

depositors may be paid, as well as out of the assets of the bank itself, the jurisdiction of a court of equity to seize such fund, and control it for the benefit of depositors, would hardly be questioned where an exigency arises that demands the exercise of such power.

It is said the alleged liability of the stockholders, under the statute, is penal. If this proposition can be maintained, it would, of course, exclude chancery jurisdiction, and depositors would have to resort to the law courts for whatever remedy might exist. Whether the liability of stockholders is primary, or a mere penalty, depends upon the construction that shall be given to that clause of the amended charter which imposes responsibility upon thém as to their individual property. The language of that amendment is broad and comprehensive. It provides, the stockholders of the corporation "shall be responsible, in their individual property, in an amount equal to the amount of stock held by them, respectively, to make good losses to depositors or others." It will be perceived, from a close reading of the charter, the liability it imposes is upon the "stockholders" of the corporation as a class, and not separately, as individuals. The imposition of a penalty is in the nature of punishment, for wrongful or tortious conduct in an individual, and is never imposed upon a class of persons in the aggregate, as a body. The definition of a penal statute is well understood. It is "one which imposes a forfeiture or penalty for transgressing its provisions, or for doing a thing prohibited." A familiar illustration often occurring is, where the charter requires certain things shall be done before any business shall be transacted by the corporation, and if done, it will subject the corporators to a certain measure of liability, that has always been held to be penalty, as punishment for wrongful or tortious conduct on the part of the corporators, which can only be recovered in an action at law. But the clause of the statute being considered, has no element that brings it within the definition of a

penal statute. The provision of the charter simply creates a liability in favor of depositors. What may be the extent of that liability will be considered further on. It simply creates a liability upon the stockholders, to depositors or others, and whatever that responsibility may be, it is primary, and exists with the liability of the bank to its depositors or other creditors. It is as much a fund for their security as the assets of the bank. This is declaring no new doctrine. It is simply the application of principles settled by the previous decisions of this court. It has been repeatedly held, the statutory liability of stockholders created by the charter, for the debts of the corporation, is a common fund for the security of its creditors. The securing of a distribution, ratably or otherwise, of such fund among creditors entitled to share in it, is a proper ground for the equitable jurisdiction of a court of chancery, as was expressly decided by this court in *Eames* v. *Doris*, 102 Ill. 350, for the benefit of depositors.

Assuming it is a correct construction of this clause of the charter that the liability imposed by its terms upon stockholders constitutes a common fund for the benefit of depositors or others, counsel do not question the fact that *Eames* v. *Doris* maintains the jurisdiction of a court of equity to administer such a fund whenever a proper case is made for so doing, for it is a familiar branch of equity jurisdiction. That it is the correct construction of the charter that the responsibility imposed upon stockholders is primary, and exists with the obligation of the corporation itself, and that it constitutes a common fund for the benefit of depositors or others, seems clear, both upon principle and upon authority, and hence the jurisdiction of a court of chancery in such cases is equally clear.

The other branch of the case, that has relation to the extent of the responsibility of the stockholders of the bank, to depositors or others, needs only a brief discussion. The question presented is entirely new in this court, and arises out of

the peculiar and unusual language contained in the charter. The obligation, as has been seen, is to "make good all losses to depositors or others." It is said the word "losses," in the charter, refers to all persons who may suffer losses by the default of the bank,—depositors or others. That is undoubtedly correct; but what is meant by the term "losses," as used in the statute? It would seem, from the argument, that defendants would restrict the meaning of the term "losses" to signify only the difference between the depositor's claim, and what he might realize by an action or bill against the insolvent bank. There are many cogent reasons in the way of adopting this definition, some of which do not readily admit of any satisfactory answer. In the first place, it would require that the responsibility imposed upon the stockholders should be treated as secondary to that of the bank, and not primary. That, as has been seen, can not be done. Again, it would render it necessary for the depositors, by bill,—for it could not be done otherwise,—to procure a ratable distribution of the assets of the insolvent corporation among all persons interested. After that should be done, then in like manner to proceed against the common fund arising from the statutory liability of the stockholders. The law has imposed no such duty upon the depositor. He may proceed against one or both funds, at his election. A party having more than one remedy, is at liberty to pursue either or all until he has obtained satisfaction of his claim. It can not be that the term "losses" was used, in this connection, in that restricted sense as to mean that which can never be recovered. Otherwise there might be no such thing as any "losses" to the depositors in this case, for there might exist a remedy against the bank for one portion, and against the stockholders for the residue, and what would there be left for the term to attach? Obviously, the term "losses" was used in a more general sense, and one usually attached to it by a common understanding. In its most general sense, the word "loss," means any depriva-

tion. In some instances it may mean that which can never be recovered, and in others that which is simply withheld or that of which a party is dispossessed. Often the context assists to a clearer understanding of the words employed in a statute or written agreement. By another section, this corporation was authorized to receive deposits from laborers and servants, and was obligated to repay such deposits when required. The suspension of the bank, by reason of insolvency, was an absolute refusal to repay the deposits to the owners, and operated as a deprivation,—a withholding of the same from the depositors,—and that is a loss, in the ordinary acceptation of that word. A portion of the value of such deposits, or all, might ultimately be recovered from either the bank or stockholder, but the deposits are lost to the owner. After the suspension of the bank, nothing remained of his deposits but the obligation of the bank or the stockholders to pay the value. That obligation might, or might not, be of value to him, depending on the fact of the solvency or insolvency of both the corporation and the stockholders. At all events, the funds have been wasted by the corporation becoming partially or totally insolvent, and that is a loss to the depositor, in the sense that term is used in the statute, and his right to proceed against the stockholders arises at once. Any other definition of this word "losses," would be inconsistent with the context, and would afford no adequate security to the depositors or others dealing with the bank.

There is another view that may be taken that leads to the same conclusion. The phrase, "to make good all losses," is equivalent "to make good all deposits." As before seen, the second section of the charter authorized the bank to receive deposits from laborers, servants and others, to be repaid when required. What would commonly be understood by the phrase, "make good all losses," or, which is the same thing, "make good all deposits?" Obviously, considered in connection with the duty imposed by the second section of the char-

ter, to repay deposits when required, is to pay them to the parties entitled to receive them, on the bank making default. How else can the "losses" or "deposits" be made good? The charter has imposed upon the stockholders the responsibility to make good all losses to depositors or others, to an amount equal to the amount of stock held by them, and the legal effect of the liability created is, to that extent they shall be required to pay back deposits to the owners when the bank suspends and refuses to pay depositors or others. This view of the law seems to have been tacitly adopted by the court in *Eames* v. *Doris, supra.* The bill in that case was to enforce the stock liability against the stockholders of the "State Savings Institution," in respect to trust funds deposited within it. It does not seem the charter imposed any stock liability for anything other than trust funds. Section 9 of the charter provided, each stockholder in the corporation shall, as to the trust funds or saving funds deposited therewith, be individually liable, to the amount of his share or shares of the capital stock, for all "losses or deficiencies" that may occur while he was such stockholder. It will be noticed, that the only difference in the words employed in this section to indicate for what the stockholders shall be liable, and in the charter of the Springfield Savings Bank, is the addition of the words, "or deficiencies." The use of these words in no way enlarges or changes the degree of responsibility created. It is obvious, the words "losses," and "deficiencies," are used in this connection as convertible or equivalent terms, and as meaning precisely the same thing. Without any discussion of the meaning of the words "losses" or "deficiencies," it was held in *Eames* v. *Doris,* the stockholders, to the extent specified in the statute, were *primarily* liable for the trust funds deposited in the institution, and that a bill in equity would lie to enforce that liability. That is the only case to which the attention of this court has been

called, bearing even remotely on the questions being discussed, and it is thought it should control.

The judgment of the Appellate Court will be reversed, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

Mr. Justice Scholfield, dissenting.