## Schrader, Assignee, etc. v. Heinzelman Brothers et al.

1. STOCKHOLDER—*May Become a Creditor.*—A stockholder in a corporation may become a creditor of the corporation, but this right relates to an existing and not to a defunct corporation.

2. STOCKHOLDERS—*Director-Stockholder's Right to Purchase Property, etc.*—The director-stockholder of a corporation, may, as to other stockholders who have an opportunity to contribute to relieve an insolvent corporation from its debts, purchase the property of the corporation at a foreclosure sale, and the other stockholders will have no right to complain; but this right relates to the rights of the stockholders as between themselves.

3. STOCKHOLDERS—*Rights of Stockholder Creditors.*—If a stockholder becomes the creditor of his corporation in good faith, during its existence and while operating as such, he would doubtless have the right to share *pro rata* in the distribution of the assets of the corporation the same as a non-stockholder creditor.

4. STOCKHOLDERS—*Creditors Withdrawing Their Claims Against the Assets in the Hands of the Assignee.*—Where a stockholder in an insolvent banking corporation, which had made an assignment, purchased the bank's certificates of deposit at a large discount for the express purpose of relieving himself from his individual liability, as a stockholder, to the creditors of the bank, and filed them with the assignee as a creditor of the bank, and afterward withdrew them and put them in judgment against the bank, *it was held* that the effect of such use of the certificates was equivalent to their withdrawal as claims against the assets in the hands of the assignee.

5. STOCKHOLDER CREDITOR—*Purchase of Certificates of Indebtedness—Surrender to Assignee.*—Where a stockholder of an insolvent banking corporation purchased certain certificates of deposit at a discount and filed them with the assignee of a corporation as creditor against the corporation, and afterward surrendered them to the assignee for cancellation, and allowed them so to remain for the period of thirteen years, *it was held* that the effect of such surrender was to withdraw such certificates as claims against the estate of the insolvent bank and cause them to be of no validity whatever except for the purpose of use in enforcing contribution among the stockholders.

6. CORPORATION INSOLVENT — *Effect of Stockholders Purchasing Indebtedness, etc.*—Where a stockholder in an insolvent corporation purchased certain certificates of indebtedness and filed them with the assignee for the purpose of receiving the dividend with the other creditors of the corporation, and afterward surrendered a part of those to the assignee for cancellation, and put the balance of them in judgment against the corporation, and afterward satisfied the judgment, *it was held* that such certificates could not be, in fact, surrendered for cancellation or put in judgment and the judgment satisfied, and at the same time be binding as claims against the estate of the insolvent corporation in the hands of the assignee.

7. CORPORATIONS INSOLVENT.—Under the law of the stockholder's liability, the amount for which a stockholder is liable to the creditors of an insolvent corporation, is as much a fund for the security of the creditors as the assets in the hands of the assignee.

8. STOCKHOLDER'S LIABILITY—*Voluntary Payment of the Creditor.*— A voluntary payment by a stockholder of an insolvent corporation to a creditor, after such stockholder's personal liability attaches, does not enable such stockholder to take an assignment of such corporation debt and put it in as a claim against the fund of the corporation, in the hands of its assignee, to share, *pro rata,* either to the amount so paid, or to the amount of the face of the debt, with other corporation creditors.

9. CORPORATIONS INSOLVENT.—*Payment of Debts by Stockholders.*— Where a stockholder of an insolvent corporation makes a payment of a debt to the creditors, such payment extinguishes the debt of the corporation to the amount of the debt so paid and extinguishes the amount of his own liability as a stockholder to the extent of the sum so paid by him.

10. INSOLVENT ESTATES—*Right of the Debtor to Purchase His Own Debt.*—A debtor may pay his debt, but he can not purchase it so as to present it as a living chose in action against himself, to share in the assets in the hands of an assignee, with other creditors.

11. STOCKHOLDERS—*Relation to the Corporation after Failure.*—A stockholder of an insolvent corporation, after its failure to pay its debts, does not stand in the relation of surety or guarantor to the corporation in the sense that they can utilize the debts of the corporation paid by him as claims against the corporation, the same as other outside creditors.

Schrader v. Heinzelman Bros.

The payment of such a debt by a stockholder is a payment by him of an original liability, and therefore as completely extinguishes it as if paid by the corporation itself.

12. STOCKHOLDERS—*Liability in Insolvent Corporations.*—A stockholder does not become liable until the corporation has failed to pay its debt; but when that condition arises, then the protection of the corporation to the extent of the face value of his stock is withdrawn by the law, and his liability as to such debt by operation of the law becomes that of the partner, and such debt, as between the stockholder and the creditor, is in law as if directly contracted originally between such creditor on the one hand and such stockholder, as partners, on the other hand, regardless of the fact that there ever was a corporation.

13. CORPORATIONS—*Insolvency—Effect of Stockholders Taking Up Certificates of Indebtedness.*—Where a stockholder of an insolvent banking corporation purchases certificates of indebtedness which had been issued by the bank, and which comprised a part of its indebtedness, *it was held* that the legal effect of such purchase was to pay and extinguish the debts of the bank so far as the other creditors were concerned.

**Memorandum.**—Proceedings under the insolvency act. Error to the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the February term, A. D. 1893. Reversed and remanded. Opinion filed June 26, 1893.

## STATEMENT OF THE CASE.

The People's Bank of Belleville, Ill., of which appellees were stockholders, failed and made an assignment under the statute, April 22, 1878. *After* the failure, these stockholders, defendants in error, individually bought up, in the aggregate, $4,575 worth of certificates of deposit of various persons, who were creditors of the bank at the time of its failure, paying for most of it from fifteen to thirty per cent of its face value, seventy-five cents on the dollar having been paid for one certificate of deposit of $200. Assignments of these certificates of indebtedness of the bank were made to the respective parties purchasing the same, and such evidences of indebtedness were filed with the assignee within three months after such assignment, as provided by law. Thereafter, on the 11th day of September, 1878, these stockholders, with the purpose of extinguishing their individual liability, which, under the law, was the face value of the stock in the bank held by each respectively, confessed

judgment in the Circuit Court of St. Clair County in favor of each other on a part of said indebtedness so purchased by them, which judgments were entered satisfied on the record by the parties within a day or two thereafter, although in fact none of the judgments were paid, nor any part thereof. On the 19th day of September, 1891, some thirteen years after the judgments were taken and satisfied, the parties, all by consent, notice being served on each other of the motion, obtained an order of court, setting aside the entry of satisfaction, the order of judgment in each case, and permission to dismiss the same from the docket. It also appears that certain other of these certificates of deposit so purchased, were, on the 8th day of April, 1879, surrendered by a Mr. Harrison to the assignee for cancellation for the purpose of releasing himself and a Mrs. Harrison from their liability as stockholders to the creditors of the bank. It appears that such certificates of indebtedness were placed in Harrison's hands for that purpose by Amos Thompson, his father-in-law, one of these defendants.

It further appears that the assignee of the bank had declared and paid a dividend to the creditors of the bank, other than these stockholders, of twenty per cent. On the 26th day of June, 1891, while said judgments were of record as such, these defendants appeared in the County Court and moved that the assignee of the bank be ordered to pay them a dividend of twenty per cent on their certificates of indebtedness, which motion the court, on the 21st day of July, 1891, denied, and rendered judgment against appellees for costs, who thereupon took an appeal to the Circuit Court, where the cause was heard and decided in favor of these defendants at the January term, 1892, of said court. The court ordered the assignee to pay these defendants a dividend of twenty per cent upon the face value of each of said certificates, and that thereafter their certificates should share *pro rata* with the other creditors, out of the remaining assets, on their face value. From this order of the court the assignee of the insolvent bank prosecutes this writ of error.

Schrader v. Heinzelman Bros.

Brief of Plaintiff in Error, Marshall W. Weir and
Charles P. Knispel, Attorneys.

The plaintiff in error contended that the ruling of the
County Court excluding these certificates from a participa-
tion in dividends was right, and the ruling otherwise by
the Circuit Court was erroneous, citing Thompson v.
Meisser, 108 Ill. 363.

Brief of Defendant in Error, Hamill & Borders,
Attorneys.

Where a case is tried by the court, without a jury, and
no propositions of law are submitted to be held by the
court, it will be presumed that all questions of law were
correctly decided. Davies v. Phillips, 27 Ill. App. 387;
Levy v. Glickauf et al., 41 Ill. App. 251; Hobbs v. Fer-
guson's Estate, 100 Ill. 232; Finch v. Johnson, 104 Ill. 111;
Wrought Iron Bridge Co. v. Commissioners, etc., 101 Ill. 518.

The presumption of the law is in favor of the correctness
of the judgment of the trial court, and it will be presumed
that the law was properly applied to the facts by the court
sitting as a jury, unless the record affirmatively shows error
in that regard. Belleville Savings Bk. v. Bornman et al.,
124 Ill. 200; Edgerton v. Weaver, 105 Ill. 48; Leonard v.
Patton, 106 Ill. 99; Paddon v. People's Insurance Co., 107
Ill. 196; Casner v. Preston, 109 Ill. 531; Miller v. Life Insur-
ance Co., 110 Ill. 102.

Mr. Justice Sample delivered the opinion of the Court.

The sole question is, were the defendants in error, under
the facts stated, entitled to share with the other creditors in
the assets of the bank. The exception preserved to the
order of the court, overruling the motion for a new trial
and entering judgment on the finding, with the assignment
of error thereon, raises that question. There is no real dis-
pute as to the facts, which summarized are, first, the de-
fendants in error were stockholders of the bank at the time
of its failure; second, the bank was indebted at that time, as

evidenced by its certificates of deposit; third, the defendants in error, *after* such failure, purchased at a large discount, over $5,000 of such certificates; fourth, such certificates so purchased were filed with the assignee of the bank in due time; fifth, that a part of said certificates were thereafter on the part of a stockholder and by the consent of one of these defendants in error, presented to the assignee for cancellation in favor of the creditors of the said bank; sixth, that the other certificates of deposit so purchased by these defendants in error were put in judgment and these judgments satisfied of record, for the purpose of relieving such stockholders from their individual liability; seventh, which judgments and entries of satisfaction were, after the lapse of some thirteen years, set aside on the order of the court by the consent of these defendants in error—the parties thereto.

The solution of this question depends upon, first, the rights acquired by these stockholders by their purchase of these certificates of the bank's indebtedness, *after* the failure of the bank; second, the effect of these judgments on such certificates as were put in judgment, and the effect of the surrender of the other certificates to the assignee for cancellation, for the benefit of the creditors of the bank.

That stockholders may become the creditors of their own corporation has been decided. Merrick v. Peru Coal Co., 61 Ill. 472; Harts v. Brown, 77 Ill. 226.

The director stockholders may, as to other stockholders, who have had an opportunity to contribute to relieve an insolvent corporation from its debts, purchase the property of the corporation at a foreclosure sale, and the other stockholders will have no right to complain. Hart's case, *supra*.

It will be observed, however, that the decisions holding that a stockholder may become a creditor of his own corporation, relate to an existing and not a defunct corporation, and that the decision as to the right of one or more stockholders to purchase the property of the corporation at a foreclosure sale, relates to the rights of the stockholders as between themselves.

If such stockholders become creditors in good faith during the existence of the corporation, and while operating as such, then doubtless such creditor stockholders would share *pro rata* in the distribution of the assets of the corporation, the same as a non-stockholder creditor.

These stockholders, however, purchased these bank certificates of deposit at a large discount, after the corporation, of which they were stockholders, had made an assignment for the express purpose of relieving themselves from their individual liability, as such stockholders, to the creditors of their corporation. While it is true such certificates were filed with the assignee, yet these stockholders withdrew them as claims against the assets, by surrendering some of them to the assignee for cancellation and by putting the others in judgment in the Circuit Court. The effect of such use of the certificates was equivalent to their withdrawal. Suppose the original owners of these certificates had, after filing them with the assignee, withdrawn and brought suit on them in the Circuit Court against these stockholders and obtained judgments on them, and then without fraud or mistake entered satisfaction of such judgments; certainly they could not have come in after a period of thirteen years, refile them and ask to share in the assets of the bank. How are these parties placed in any better position by being assignees of such certificates and stockholders in the bank?

The fact that they did not succeed, in law, by such proceedings, in relieving themselves from the individual liability to the full amount of the face value of such certificates, does not, it seems to us, determine the effect of such proceedings upon the certificates themselves, either as to withdrawal from before the assignee or merger in the judgments. We see no escape from the conclusion, as to these certificates of indebtedness that were in fact surrendered to the assignee for cancellation, and those certificates, that were in fact put in judgments and those judgments receipted, that they were withdrawn as claims against the estate of the insolvent bank, and ceased to be of any validity whatever except for the purpose of use in enforcing contribution

among the stockholders. Such certificates could not be in fact surrendered for cancellation or put in judgments and those judgments satisfied, and at the same time, be pending as claims against the estate. We do not wish, however, to rest our decision upon this view alone, of the withdrawal of the claims from before the assignee.

We understand that under the law of liability of these stockholders, the amount for which they were liable to the creditors of the bank was as much a fund for the security of the creditors, as the assets of the bank (Eames v. Doris, 102 Ill. 350; Tunesma v. Schuttler, 114 Ill. 156; Queenan v. Palmer, 117 Ill. 619–628); and that a voluntary payment by a stockholder to a creditor, after such stockholder's personal liability attaches, does not enable such stockholder to take an assignment of such corporation debt and put it in as a claim against the funds of the corporation, to share *pro rata*, either to the amount he paid or to the amount of the face of the debt he so took up, with other corporation creditors. By such payment, such stockholder extinguishes the debt of the corporation to the amount of the debt so taken up, and extinguishes the amount of his own liability to the extent of the sum so paid by him. Ganch v. Harrison, 12 Brad. 457; Thompson v. Meisser, 108 Ill. 359.

A debtor may pay his debt, but he can not purchase it, so as to present it as a living chose in action against himself, to share in the assets with other creditors. Edison Electric & I. Co. v. DeMott, N. J. case, Chicago Legal News, June 3, 1893, p. 341.

If the stockholder is permitted to take a part of such fund, viz., his liability, and with it purchase at a discount from the creditors of the insolvent bank, the bank's liabilities, and turn the same in at their face value for such stockholder's benefit, then it seems to us that the object of the statute would be defeated.

As is said in the case of Thompson v. Meisser, 108 Ill., at p. 368, "What advantage would the statute be to the outside creditors?" We do not understand that these stockholders, after the failure of the bank to pay its debts, stood

Schrader v. Heinzelman Bros.

in the relation of sureties or guarantors of the bank, in the sense that they could utilize the debt of the bank so paid by them, as claims against the bank, the same as other and outside creditors.

We understand the payment of such a debt by a stockholder is the payment by him of an original liability, and therefore as completely an extinguishment of it, as if paid by the bank itself.

While it is true, the stockholder does not become liable until the bank has failed to pay its debt, yet when that condition arises, then the protection of the corporation, to the extent of the face value of his stock, is withdrawn by the law, and his liability as to such debt, by operation of law, becomes that of a partner. Therefore, *such* debt, as between the stockholders and such creditor, is in law, as if directly contracted, *originally*, between such creditor on the one hand and such stockholders, as partners, on the other, regardless of the fact that there ever was a corporation.

We understand the case of Fuller v. Ledden, 87 Ill. 310, which has since been several times approved, expressly so holds. See Buchanan v. Meisser, 105 Ill. 638, 643.

If this view of ours of the law, is correct, then it certainly follows that partners can not purchase their own debts; they can only pay them. It also follows, that the legal effect of the acts of these defendants in error, in taking up these certificates of the bank's indebtedness, was to pay and extinguish them, so far as the other creditors were concerned.

These views are expressed as to these certificates on the hypothesis of the facts in this case, that the money actually paid by these stockholders did not in any case exceed the amount of their individual liability, as evidenced by the shares of stock held by them respectively.

We are constrained to reverse this case, with directions to dismiss the proceedings of the defendants in error in the court below.

Reversed with directions.