## W. C. Wright, Appellee, v. Asbury M. Loring, Appellant.

### Gen. No. 8,523.

Opinion filed November 4, 1931.

Acton, Acton & Baldwin, Rearick & Meeks and Jones, McIntire & Jones, for appellant.

Walter V. Dysert, Hall & Holaday and Hutton & Clark, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This is an action of debt upon a penal bond. The bond involved is in the words and figures following, viz.:

### Bond of Depositary Bank

Whereas, W. C. Wright of Bismarck, Illinois, has been duly elected by the Trustees of Schools of Township No. 21 North, Range No. 11 West of the Second Principal Meridian, in Vermilion County, Illinois, as the Township Treasurer of said Township, and has duly executed a good and sufficient bond payable to said Trustees of Schools and conditioned upon the faithful discharge of his duties, and

Whereas, said Township Treasurer desires to deposit in certain State Banks, all moneys of which he is to have the custody and from which he is required to pay all lawful orders issued by the School Directors or the Board of Education of any School District in his Township; and

Whereas, since said Treasurer is required by law to give Bond to secure the payment of all such lawful orders, whenever sufficient moneys shall have come into his hands for such purpose, he feels that it is right and proper that, as part of the consideration for depositing Township funds, in said Banks, the Directors of each such Depositary Bank should execute and deliver to him, as such Township Treasurer, a good and sufficient Bond to secure the prompt payment,

upon presentation of all lawful orders, of all moneys that he may have deposited in their Bank; therefore

KNOW ALL MEN BY THESE PRESENTS, That we, the State Bank of Illiana, an Illinois Corporation, as principal, and A. M. Loring and D. L. Andrews, Directors of said Corporation, acting in their individual capacity, as sureties, are held and firmly bound unto W. C. Wright, as Township Treasurer of Township No. 21 North, Range No. 11 West of the Second Principal Meridian, and unto his successors in office, in the penal sum of $5,000.00 Dollars, good and lawful money of the United States to be paid to the said W. C. Wright, Township Treasurer aforesaid, or to his successors in office, for which payment well and truly to be made we bind ourselves, our heirs, executors, administrators, representatives and assigns, jointly and severally, firmly by these presents.

Dated this 2nd day of August, A. D. 1928.

Now, therefore, the condition of this obligation is such that if the above bounden State Bank of Illiana, or the above bounden sureties, or either of them, their heirs, executors, administrators, representatives or assigns shall well and truly pay or cause to be paid without delay, any and all lawful school orders which may be drawn against the funds on deposit in said bank, then the above obligation to be void, otherwise to remain in full force and virtue.

Signed, sealed and delivered by:

> ILLIANA STATE BANK.
>
> Fred R. Bell, Cashier
>
> A. M. Loring (Seal)
>
> D. L. Andrews (Seal)

STATE OF INDIANA, ⎱ ss.
Warren County, ⎰

I, FRED R. BELL, Notary Public in and for the County and State aforesaid, hereby certify that A. M. Loring

and D. L. Andrews who are each personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes as herein set forth.

Given under my hand and notarial seal this 2nd day of August, A. D. 1928.

(Seal)    Fred R. Bell,

Notary Public.

My commission expires Nov. 16, 1930.

## Pleadings

The suit when first filed, and the original declaration, was by the Trustees of Schools of Township No. 21 North, Range 11 West of the 2nd P. M., in Vermilion county, Illinois, a school corporation, and W. C. Wright, as Township Treasurer of Township No. 21 North, Range 11 West of the 2nd P. M., aforesaid, as plaintiffs against the State Bank of Illiana, a corporation, and Asbury M. Loring and D. L. Andrews, as defendants.

By numerous amendments, changes and dismissals, before the trial, the case was finally entitled and maintained by W. C. Wright, as Township Treasurer, aforesaid, as sole plaintiff, against Asbury M. Loring, as sole defendant. The pleadings were quite voluminous, before the issues were finally settled and issues joined. The case, however, was finally tried upon an amended declaration and the pleas and replications filed, presenting issues on said amended declaration.

The amended declaration consisted of two counts. The first count alleges in substance that there was a mistake in the name of the bank mentioned in the bond; that the name, "State Bank of Illiana," as used

in the bond, was intended to be "Illiana State Bank," the true corporate name; that plaintiff, as treasurer, had deposited in said bank certain school moneys amounting to more than $5,000; that D. L. Andrews is a bankrupt; that the Illiana State Bank, D. L. Andrews and Asbury M. Loring, each signed and sealed the bond in question, which is set out in said first count; that at all times there was more than $5,000 of school money on deposit in the bank; that on June 14, 1930, the Illiana State Bank closed its doors and ceased to do business; that said bank has been in the hands of the Auditor of Public Accounts since that date.

The second count of the amended declaration alleges in substance that there was a mistake in the name of the bank, the same as in the first count, also the same general allegations with the following additional allegations in substance: that plaintiff had, by means of checks, at various times, withdrawn a portion of the deposits; that neither the bank nor its officers had made any objection to paying said checks; that on the day before the bank closed plaintiff made a verbal demand upon the cashier for the balance of his money on deposit; that said demand was refused; that the refusal was not based upon the form of the demand; also alleges that on June 14, 1930, the officers and directors of the bank, including Loring and Andrews, passed a resolution closing the bank; also that on June 14, 1930, the Auditor of Public Accounts took charge of the bank and appointed Wilbur P. Craig as receiver; that thereafter the court appointed Craig as receiver; that Craig, as such receiver, has since had possession of the assets of the bank; also, that plaintiff had made a verbal demand upon the receiver for his money; that the receiver refused to pay him; that thereafter he filed a written claim with the receiver; that the receiver has not paid him; also that the bank, since June 14, 1930, has been and is insolvent; that

because of said insolvency defendant waived all requirements by plaintiff to present any lawful school order.

Appellee in the declaration assigned eight various breaches of the bond by appellant.

There were various pleas by appellant, among which a plea under oath that the instrument was not his deed; that the bond had not been breached and a denial of damages. There were various replications, demurrers to a part of the same, rulings of the court and finally issues joined. There was a verdict and judgment for appellee in the sum of $5,000 and appellant has appealed.

We shall only give consideration to the substantial issues as brought to this court. The issues that appellant's signature to the bond was a forgery has been abandoned. The chief contention on this appeal is, that the condition of the bond provides only that the bank shall well and truly pay or cause to be paid without delay any and all *lawful school orders* which may be drawn against the funds, and that in this respect the bond has not been breached. The proofs show that in various instances appellee drew funds from the bank by check, but that in no case was a formal school order, signed by school directors under Cahill's St. ch. 122, ¶ 124 (section 124 of chapter 122 of Smith-Hurd's Rev. Stat. 1929) ever presented to the bank and payment refused. This leads to the question as to what is meant in the bond by the term "lawful school orders," and whether it is confined to the orders as described in said section 124. Must such orders, in form, be presented to the bank and payment be refused before there can occur a breach of the bond? There are various duties of the township treasurer and different funds of which he is the custodian. There are the tax funds, the permanent township funds, the State distributive fund, sale of school property fund, the district teachers'

fund and possibly other funds. School purposes mean anything those in charge had the right to do in regard to school purposes. (Words and phrases, 2nd ed. vol. 4, 69; *Chicago & Alton R. Co. v. People,* 205 Ill. 625, 629.) Cahill's St. ch. 122, ¶ 71 (section 71 of chapter 122, Smith-Hurd's Stat. 1929) provides: "The township treasurer shall be the only lawful depositary and custodian of all township and district school funds, and shall demand, receipt for and safely keep, according to law, all bonds, mortgages, notes, moneys, effects, books and papers of every description belonging to his township." Section 72 provides: "The township treasurer shall keep the principal of the township fund loaned at interest," etc., and provides the methods of loaning the moneys and funds. Some light is thrown upon this question by the preliminary clauses of the bond. It recites that appellee, of Bismarck, Illinois, has been duly elected by the trustees of schools of Township No. 21 North, Range No. 11 west of the Second Principal Meridian, in Vermilion County, Illinois, as the township treasurer of said township, etc., the facts of his qualification and giving bond, etc., and recites: "Whereas, said Township Treasurer desires to deposit in certain State Banks, all moneys of which he is to have the custody and from which he is required to pay all *lawful orders* issued by the School Directors or the Board of Education of any School District in his Township; and . . . he feels it is right and proper that, as a part of the consideration for depositing Township funds in said banks, the Directors of each said Depositary Bank should execute and deliver to him, as such Township Treasurer, a good and sufficient Bond to secure the prompt payment, upon presentation of all lawful orders, of all moneys that he may have deposited in their Bank," etc. The preliminary clause and necessity is a bond "to secure prompt payment . . . of all moneys that

he may have deposited in their bank," etc. It says also, "upon presentation of all lawful orders," not necessarily when lawful orders are presented *to the Bank,* but merely upon their presentation—presumably to the treasurer. Neither does the condition of the bond require that any "lawful school orders" be presented to the bank, but its real requirement is that when "lawful school orders" are presented, presumably to the Treasurer, drawn against the funds in the Treasurer's hands which have been deposited in the Bank or "on deposit in said Bank," then the makers of the bond will well and truly pay or "cause *to be paid,"* the said orders. This does not require any order in form to be presented to the bank. The bond covers the payment of any lawful school order presented to the Treasurer, as required by law; *the bank will cause it to be paid.* What is a "lawful school order?" A form order, as provided by Statute, made by a Board of Directors, that is one. The Statute requires the Treasurer to loan the funds. That is a lawful school order by Statute and when a loan is effected it is the duty of the Treasurer to hand over the funds in some manner to the borrower, for which no special form of words or markings are pointed out in the Statute, nevertheless, it is a "lawful school order" just the same as an order made by the Board of Directors of a school district, although no particular form order is pointed out by statute. No particular form of order is pointed out except as to school district moneys. The Statute points out other school orders for which no particular *form* is provided, nevertheless they are equally *"lawful school orders."* In no case, under the terms of the bond, must these orders be presented to the bank *in form.* The bond requires that the bank and sureties will *cause them to be paid* out of the funds on deposit. This payment may be by check or other-

wise, as the parties may agree and determine. The moneys were placed in the depositary in a checking account to the credit of appellee, ''Treas. Bismarck, Ill.'' and this construction of the account was so established by the depositary bank and its board of directors, of which appellant was a member. Checks were cashed by the bank, drawn by appellee as school treasurer, and it is to be presumed that all the acts of this official were legal and lawful in the uniform line of his duty, unless the contrary is shown and it is to be presumed that all checks drawn by him as school treasurer were for lawful school orders, unless the contrary is shown. *State National Bank v. Reilly,* 124 Ill. 464. There is breach of a depositor's bond where there is failure to make payment on demand; action may be brought against the sureties when such breach has arisen. 18 Corpus Juris, 594. Where the depositary has put it out of its power to fulfil the conditions of the bond, as by going into insolvency, no demand is necessary before action brought on the bond, and in any event a demand on the receiver is sufficient. (18 Corpus Juris, 595; *Buck v. Eaman,* 18 Ill. 529; *Scott v. Armstrong,* 146 U. S. 499.) There can be no question in this case as to the breach of the bond and the sufficiency of the demand. It is insisted that the verdict is excessive in the amount of damages allowed; that it cannot be determined what the actual loss will be until the Bank is finally liquidated. Such is not the rule. Appellee has been deprived of his entire deposit amounting to double the amount of the bond. Appellee is entitled to the full amount of the bond. (*Queenan v. Palmer,* 117 Ill. 619, 630.)

It is objected on the part of appellant that it is not shown that Bell, the cashier, had any authority to sign the bond for the bank, and that the bank seal is not attached and therefore appellee is not liable on

the bond. But it was held in *Trustees of Schools v. Sheik,* 119 Ill. 579, 584:

"We have given the authorities bearing on the question due consideration, and we are not inclined to adopt the view held by the courts, that a bond signed by the sureties without the signature of the principal may not be binding upon those who execute it, as was held in the case cited from Missouri, and other like cases. If the sureties saw proper to bind themselves without the principal executing the bond and becoming bound, we think they might do so, and their undertaking is one that may be enforced in the courts by an appropriate action. The fact that the principal obligor in this case failed to sign the bond, was a mere technicality, which ought not to affect the rights of any of the parties concerned. In what way are the sureties injured by the omission of the principal obligor to sign the bond? If they are compelled to pay the trustees any sum of money on account of the default of the treasurer, they can recover the amount back from him whether he signed the bond or not. So far, then, as they are concerned, they are in as good a position as if Reitz, the treasurer, had properly executed the bond. If Reitz is insolvent, a judgment in favor of the trustees, against him, could be of no benefit to the sureties." (Same case, 10 Ill. App. 51.)

Some contention is made as to the name of the Bank set out in the body of the bond as State Bank of Illiana and purporting to have been signed under the name of Illiana State Bank. It appears that State Bank of Illiana is the correct name of the Bank. From what we have stated in this opinion it is needless to discuss this assignment of error.

Appellant assigns error that the verdict is against the manifest weight of the testimony and that the jury should have found that appellant never signed the instrument. Appellant does not argue this assignment of error.

The jury saw and heard the witnesses and testimony and we cannot hold under the circumstances that the verdict is not correct. Finding no error in the record that will warrant a reversal, the verdict and judgment of the circuit court of Vermilion county are affirmed.

*Affirmed.*